

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-23-2008

# Nikollbibaj v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3392

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Nikollbibaj v. Atty Gen USA" (2008). *2008 Decisions.* Paper 811.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/811

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**IMG-146**                                                   **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3392

GYLE NIKOLLBIBAJ,
                                     Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                           Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96 264 978)
Immigration Judge:  Honorable Eugene Pugliese

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 16, 2008

Before: AMBRO, FISHER and JORDAN, Circuit Judges

(Opinion filed: July 23, 2008)

OPINION

PER CURIAM

Gyle Nikollbibaj petitions for review of a Board of Immigration Appeals ("BIA")

decision dismissing her appeal of the Immigration Judge's ("IJ") decision denying her

applications for relief from removal.  We will deny the petition for review.

Nikollbibaj is a native of Yugoslavia and citizen of Serbia Montenegro. She entered the United States in 2003 as a visitor and applied for asylum. The Immigration and Naturalization Service subsequently issued a notice to appear charging that Nikollbibaj was subject to removal because she remained in the United States longer than authorized. Nikollbibaj conceded that she was removable but sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

In support of her applications for relief, Nikollbibaj, who is Albanian, testified that her problems began in Kosovo in 1981 when she and her husband participated in demonstrations. The Serbian police beat them, and her husband was held for two weeks. Nikollbibaj stated that in 1990 the police beat her father because he was Albanian, and that the beating caused him to suffer a fatal heart attack. Nikollbibaj further testified that in 1998 she held a meeting at her house for Democratic League party members. During the meeting, five soldiers came to her house and beat her and the other members. The soldiers took Nikollbibaj, her husband, and her daughter and held them for two days. The soldiers beat them and insulted them based on their religion and race. The soldiers threatened to kill them if they did not stop their political activities.

Nikollbibaj stated that in 1999 eight policemen went to her home and ordered her and her family to leave, stating that if they did not do so, they would be killed. Nikollbibaj went to Albania for three months. When she returned to Kosovo, the Serbian police had burned down her home. Nikollbibaj also stated that she participated in

2

election activities in Kosovo in 2000 and 2001. In 2000, two Serbian-speaking people threatened Nikollbibaj on the street, stating that if she did not disappear, they would kill her and her son and kidnap her daughter.

Nikollbibaj came to the United States in 2002 to attend her daughter's wedding. She stayed for four or five weeks, but then returned to Kosovo because she learned that her husband and son were beaten. In 2003, Nikollbibaj returned to the United States in order to seek asylum. Nikollbibaj stated that her husband is working in Serbia. Her children are in other countries, including her daughter who is in the United States.

The IJ did not doubt that Nikollbibaj is an Albanian from Kosovo who was forced to flee at the hands of the Serb military and paramilitary. The IJ, however, questioned Nikollbibaj's political activities, noting that there was no evidence that she was politically involved in the United States, and that she did not seem to have a thorough knowledge of the current conditions in Kosovo. The IJ stated that Nikollbibaj did not give any specific information about her participation in the elections. Although she did produce a copy of a Democratic League membership card, the IJ had doubts about the reliability of this evidence, in part because it was not authenticated. The IJ noted that Nikollbibaj's testimony was generally consistent with her asylum application, with the exception of a date on which she stated she was threatened, but the IJ made an adverse credibility finding because her testimony lacked detail and corroboration. The IJ concluded that Nikollbibaj did not establish past persecution or a well-founded fear of

3

future persecution.

The IJ further stated that, even if Nikollbibaj had suffered past persecution, she did not have a well-founded fear of future persecution because circumstances in Kosovo have changed and the population is now ninety percent Albanian. The IJ noted that a UN protectorate runs the government, that the United States Department of State report did not reflect attacks against Albanians, and that Nikollbibaj's husband was in Kosovo running a business.

Finally, the IJ noted that in some cases an individual may be granted asylum, even though future persecution is unlikely, because the past persecution was especially severe. The IJ found that Nikollbibaj's past persecution was not severe enough to warrant asylum, given that there was little likelihood of future persecution.

On appeal, the BIA found the IJ's adverse credibility finding clearly erroneous, explaining that the IJ based his finding on speculation rather than specific inconsistencies central to Nikollbibaj's claim that the Serbs arrested, harmed, and sent her into exile on account of her ethnicity, religion, and political opinion. Assuming that Nikollbibaj established past persecution, however, the BIA concluded that the evidence of changed country conditions rebutted a presumption of a well-founded fear of future harm on account of a protected ground. The BIA explained that the Democratic League is a legal, prominent party with a number of parliamentary seats in Kosovo, that the Democratic League has taken a public stance in eliminating violence in Kosovo, and that UN forces

4

remain in Kosovo to help maintain stability and peace. The BIA also noted that Nikollbibaj came to the United States in 2002 and then returned to Kosovo, and that her husband still lives there and operates a business. The BIA also observed that the severity of any persecution which Nikollbibaj may have endured did not rise to a level warranting a grant of asylum based on such past persecution alone. This petition for review followed.

We review the agency's findings under the deferential substantial evidence standard. We will reverse those findings only if "any reasonable adjudicator would be compelled" to disagree with them. 8 U.S.C. § 1252(b)(4)(B).

Nikollbibaj argues that the IJ's finding of changed country conditions was tainted by his flawed negative credibility finding, that the IJ failed to shift the burden of proof of changed country conditions to the Government, and that the IJ placed too much weight on the United States State Department asylum profile. The BIA, however, did not adopt the IJ's decision. The BIA only affirmed the conclusion that Nikollbibaj failed to demonstrate eligibility for asylum, withholding of removal, or protection under the CAT. Where the BIA does not defer to the IJ's decision, we review only the decision of the BIA. Voci v. Gonzales, 409 F.3d 607, 612 (3d Cir. 2005). Although Nikollbibaj also contends that the BIA erred by finding changed country conditions "based on the IJ's flawed analysis who failed to find persecution in the first place," Pet. Br. at 9, the BIA's decision reflects that the BIA did not rely on the IJ's analysis but provided its own

5

reasons regarding changed country conditions.[1]

Nikollbibaj further argues that the BIA erred in concluding that she should not be granted asylum pursuant to 8 C.F.R. § 208.13(b)(1)(iii)(A) based on the severity of her past persecution. Where there is little likelihood of future persecution, a favorable exercise of discretion may be warranted for humanitarian reasons where an individual has suffered atrocious forms of past persecution. Matter of Chen, 20 I. & N. Dec. 16, 19 (BIA 1989).

We recognize that Nikollbibaj was the victim of threats and humiliation, that she was detained for two days, that Serbian forces beat her and her family, that her father died after a beating by Serbian police, and that she lost her home. However, we agree with the Government that her mistreatment does not rise to the level seen in those cases where asylum has been granted based on past persecution alone. See, e.g., Vongsakdy v. INS, 171 F.3d 1203 (9th Cir. 1999) (petitioner was a prisoner in a Laotian "re-education" camp and was beaten, tortured, starved, forced to perform hard labor over extended time, and made to witness murder of friend); Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989) (petitioner suffered from Chinese "re-education," beginning as a child in the Cultural

---

[1] Nikollbibaj also notes our decision in Berishaj v. Ashcroft, 378 F.3d 314, 327-28 (3d Cir. 2004), for the principle that general evidence of changed country conditions is insufficient to rebut specific grounds for a well-founded fear of future persecution. Berishaj is distinguishable because in that case there was evidence that the police were looking for the petitioner after he left the country, and that the petitioner's brother was put in jail. There is no evidence that anyone is looking for Nikollbibaj. As noted by the BIA, Nikollbibaj's husband remains in Kosovo and runs a business.

Revolution and lasting over a decade, including beatings, isolation, food deprivation, and public humiliation). The BIA's denial of humanitarian asylum was not "manifestly contrary to the law and an abuse of discretion." See 8 U.S.C. § 1252(b)(4)(D) (setting forth standard of review).

Finally, Nikollbibaj argues that the BIA erred by failing to conduct an independent analysis of her CAT claim. We disagree. In her appeal to the BIA, Nikollbibaj did not challenge the denial of her CAT claim. In addition, in light of the changed country conditions, substantial evidence supports the BIA's conclusion that Nikollbibaj did not demonstrate eligibility for protection under the CAT.

Accordingly, we will deny the petition for review.